**Ilene R. ALLEN, Plaintiff and Appellant,**

v.

**Paul KLEVEN, Defendant, Third-Party Plaintiff, and Appellee,**

v.

**James WILLIAMS, Third-Party Defendant and Appellee.**

Civ. No. 9848.

Supreme Court of North Dakota.

June 9, 1981.

Mills & Moore, Bismarck, and Robert W. Palda, Minot, for plaintiff and appellant; argued by William R. Mills, Bismarck.

Harris P. Kenner and Carl O. Flagstad, of Kenner, Halvorson & Sturdevant, Minot, for defendant, third-party plaintiff, and appellee.

McGee, Hankla, Backes & Wheeler, Minot, for third-party defendant and appellee; argued by Donald L. Peterson, Minot.

VANDE WALLE, Justice.

Ilene Allen appealed from a judgment based on a jury verdict rendered on a personal-injury lawsuit in the district court of Ward County. We affirm.

The incident giving rise to the underlying action in this appeal was an auto accident wherein Allen was injured while a passenger in a car driven by James Williams. Williams's car was hit by a vehicle driven by Paul Kleven after Kleven drove through a red light.

Allen sued Kleven for damages. In her complaint Allen did not ask for a jury trial. In his answer Kleven alleged that it was Allen's and Williams's carelessness and negligence that caused injury, if any, to Allen. Kleven demanded a jury trial without specifying the number of jurors he desired. In North Dakota, pursuant to Rule 38(c), N.D. R.Civ.P., unless a specific request for a 12-member jury is made, a six-member jury will be empaneled.

Later, Kleven initiated a third-party action against Williams, alleging that Williams was negligent in the operation of his car and requesting contribution against Williams in the event Kleven should be found liable for Allen's injuries. In his answer Williams denied any negligence on his part and specifically demanded that the matter be heard by a 12-member jury. Subsequently, at pretrial conference, Williams agreed to have the number of jurors reduced to six.

During the course of the trial, several events occurred which Allen now argues constitute reversible error. One occurred when, at the close of the trial, Allen moved to have the court prohibit Kleven's counsel, during summation, from making reference to Allen's failure to have her seatbelt fastened prior to the collision. The court ruled that seatbelts could be mentioned by the defendant in reference to mitigation of damages but not in relation to any alleged negligence on Allen's part. Consequently, Kleven's counsel suggested to the jury:

"If she had had the seat belt fastened, maybe the knee wouldn't have gotten injured."

During his opening statement to the jury, Kleven's counsel stated:

"My client, Mr. Kleven, says the car he hit was coming from here (indicating) to make a turn this way. And the Plaintiff and her boyfriend, Mr. Williams—and they are boyfriend and girlfriend—we'll be able to show, I'm sure, that they had been going together since September prior to the January 28. Of course, I submit that is why he hasn't been sued, too."

At this point Allen's counsel objected and the judge instructed the jury to disregard that part of the statement regarding Allen and Williams's relationship. Later, Kleven's counsel, on recross-examination of one of Allen's witnesses, asked:

"Didn't you, in fact, conjure up this stuff in recent times since you discovered you were old buddies of Ilene Allen from 1970–1971—?"

Again, Allen's counsel objected and, again, the court instructed the jury to disregard that question.

Prior to the trial, Kleven moved the court to suppress a portion of a deposition of an economist, Dr. Reddi, which Allen sought to be admitted in evidence. Kleven's objection centered on that part of Dr. Reddi's testimony regarding the potential earning capacity of Allen. Specifically, Kleven argued that the use by Dr. Reddi of inflationary factors in computing the $259,000 future earnings of Allen was speculative, irrelevant, and conjectural. During the trial, the court granted Kleven's motion regarding Dr. Reddi's deposition only to the extent that the inflationary factors were involved.

Before the trial, Williams also moved the court to exclude from evidence medical bills and other bills such as past babysitting and housekeeping expenses which had been incurred by Allen and which had been paid for under Chapter 26–41, N.D.C.C., the Auto Accident Reparations Act (commonly referred to as the "No-Fault Insurance Act"). The trial court's ruling on this matter came during the trial and that ruling was:

" . . . whatever item that has been shown that has been compensated for—such as household money, babysitting, all of that—will be excluded along with the hospital and doctor bills, . . ."

At the close of the trial the trial court directed a verdict in favor of Allen on the question of negligence and left for the jury to decide the distribution of negligence as between Kleven and Williams. The only other question to be decided by the jury was the amount of damages to be awarded Allen. Prior to giving instructions to the jury regarding the elements of damages, the trial court refused Allen's request to include an instruction as to loss of productive time. The jury found that Kleven's negligence had contributed to 95 percent of Allen's injuries and that Williams's negligence was responsible for the remaining five percent. The jury also found that Allen was entitled to $10,000 in damages.

Allen now appeals from that verdict and the judgment entered thereon. In this appeal Allen asks this court to remand for a new trial the issue of damages and that the new trial be before the court or a jury of 12. Allen predicates this appeal on the following issues:

1. Whether or not the trial court erred by allowing the number of jurors to be reduced from 12 to six.

2. Whether or not the trial court erred by permitting Kleven's counsel to argue that had Allen used her seatbelt she might not have sustained the injuries that she did.

3. Whether or not the conduct of Kleven's counsel was prejudicial to Allen.

4. Whether or not the trial court erred when it excluded the portion of Dr. Reddi's disposition that relied on inflationary factors to project Allen's potential earning capacity.

5. Whether or not the trial court erred in refusing to allow Allen to introduce medical, babysitting, and housekeeping bills which had previously been paid under the Auto Accident Reparations Act.

6. Whether or not the trial court erred in foreclosing arguments or proof of future medical expenses as damages.

7. Whether or not the trial court erred in refusing to give the jury a specific instruction on loss of productive time.

Prior to an examination of the issues raised by Allen in this appeal we must consider a motion to dismiss the appeal made to this court by Kleven. In his motion, Kleven argues that because Allen did not present the trial court with a motion for a new trial she should not be permitted to ask this court to determine the issue of whether or not a new trial is warranted. Without expressly stating so, Kleven apparently bases his contention on the fact that Allen's notice of appeal specifically identifies the jury verdict as the event upon which the appeal is grounded. We know of no rule, nor does Kleven point to one, which requires that an appellant seeking to have this court remand a case for a new trial must first move the trial court for a new trial. We recognize that an issue or contention not raised to or considered by the trial court cannot be raised for the first time on appeal. *Moran v. Moran*, 200 N.W.2d 263 (N.D.1972). However, where an appeal is from a judgment, there is nothing which precludes the request for a new trial nor a determination by this court to remand a case for a new trial. Rule 35(b), N.D.R.App.P.

Ordinarily, appeals may be taken only from judgments or orders made appealable by statute. *City of Grand Forks v. Board of Cty. Comrs.*, 284 N.W.2d 420 (N.D.1979). In the instant case the circumstances were such that the judgment was entered on the jury verdict on September 2, 1980, and the notice of entry of judgment was served on Allen on September 15, 1980. Allen's notice of appeal, although specifying the jury verdict as that which was being appealed from, was not filed until September 16, 1980. Thus the judgment on the verdict had been filed for two weeks by the time Allen's notice of appeal was filed. Therefore, by the time Allen filed her notice of appeal, the verdict had been incorporated into a judgment and notice of judgment had been

given. We believe, under the circumstances of this case, that to allow what amounts to, at this time, a technical inaccuracy to foreclose the opportunity for an appellant to appeal a judgment to this court would not serve justice. Kleven's motion to dismiss this appeal is denied.

I

Allen argues that the trial court erred when it allowed the number of jurors to be reduced from 12 to six. We point out here that our consideration of the alleged errors raised by Allen is controlled by the "harmless error" rule found at Rule 61, N.D.R. Civ.P.[1]

Allen relies upon the last sentence in Rule 38(e), N.D.R.Civ.P., which states:

"A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

She reasons that when Williams agreed with Kleven to have the matter tried by a jury of six, Williams in effect withdrew his demand for a jury trial and allowed Kleven's demand to stand in its place. Allen argues that the error rests in the fact that she, as a party, not only did not consent to such a withdrawal but affirmatively objected to it. On the other hand, Kleven and Williams argue that the entire issue of what size the jury should be was germane only to the action between them as third-party plaintiff and third-party defendant. They further assert that under Rule 38(e), N.D.R.Civ.P., Allen waived any right she might have had regarding the number of jurors because at no time did she make a demand for a jury trial.[2]

We do not believe it is necessary to determine which argument is controlling. Allen's argument is that she wanted the matter to be tried to the court or to a jury of 12, but not to a jury of six, and that the trial court erred by allowing the number of jurors to be reduced from 12 to six. We believe that the reasons advanced by her to establish that there should have been 12 jurors are conjectural and do not demonstrate that the alleged error was prejudicial to her. It is well settled in this State that on appeal, the appealing party has the burden of proof of establishing not only that the trial court erred but that such error was highly prejudicial to his cause. *Zimmer v. Bellon*, 153 N.W.2d 757 (N.D.1967). We therefore have nothing before us from which to conclude that if an error was made by the trial court when it allowed the jury to be reduced from 12 to six members, it was anything more substantial than harmless error.

II

Allen contends that the trial court erred when it allowed Kleven's counsel, in his closing argument to the jury, to refer to Allen's failure to have her seatbelt fastened at the time of the collision. The reference made by Kleven's counsel included the suggestion that Allen possibly would not have suffered all her injuries had the seatbelt been fastened.

Allen relies upon *Romankewiz v. Black*, 16 Mich.App. 119, 167 N.W.2d 606 (1969), for the proposition that, because no courts have found nonuse of a seatbelt to be negligence per se (i. e., there is no duty to wear a

---

1. Rule 61, N.D.R.Civ.P., provides:

 "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

2. Rule 38(e) reads:

 "(e) *Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

seatbelt), failure to wear a seatbelt cannot be held to be a breach of duty to avoid consequences or minimize damages. Allen thus concludes: "... the entire matter [nonuse of seatbelts] should have been withheld from the jury. Failure to do so was prejudicial error."

Kleven, on the other hand, directs us to the annotation at 80 A.L.R.3d 1033 and to the cases noted therein where some courts have ruled that nonuse of seatbelts is a proper consideration for a jury to determine the issue of mitigation of damages. The annotation at 80 A.L.R.3d deals with cases generally involving one of two issues: (1) whether or not evidence of nonuse of a seatbelt is admissible; or (2) whether or not a jury should receive instructions regarding nonuse of a seatbelt with respect to mitigation of damages. The trial court expressly ruled that it would not give any instructions to the jury regarding the issue of seatbelts. The issue of admissibility of evidence regarding Allen's nonuse of a seatbelt was not raised in the trial court until after Kleven's counsel asked Allen on cross-examination whether or not she was wearing a seatbelt at the time of the collision. Allen's counsel objected only at the point Allen was asked:

> "If you had had the seat belts fastened, then your knee wouldn't have gotten into the ashtray, either, would it?"

The trial judge sustained the objection as being conjectural and with no proper foundation. Thus Allen's testimony that the automobile was equipped with seatbelts but that she was not using them was entered into the trial as evidence without objection and as such was properly within the realm of consideration by the jury. Allen's assertion now that the seatbelt matter should have been totally withheld from the jury comes too late. It was not the trial court's permission to Kleven's counsel to make reference in summation to the nonuse of a seatbelt which put the matter in front of the jury. It was the failure of Allen to object to the question of the use of a seatbelt in the first instance which provided the jury with the opportunity to consider seatbelts. Regarding the reference made by

Kleven's counsel to seatbelts, this court has set forth the rule that counsel's argument must be confined to facts in evidence and the proper inferences which flow therefrom. *King v. Railway Express Agency, Inc.*, 107 N.W.2d 509 (N.D.1961). We do not believe the reference by Kleven's counsel reflects a deviation from this rule, but if it was error to permit the reference to seatbelts by Kleven's counsel, it was harmless error. Rule 61, N.D.R.Civ.P. The jury was informed, without objection, that Allen did not use seatbelts and that the trial court had sustained an objection to a question about the effect of failing to use them because the effect of their nonuse was speculative. Thus the jury was made aware that any suggestion in closing argument as to the effect of nonuse of the seatbelts was speculative. Upon the whole record we are satisfied that this portion of the closing argument by Kleven's counsel, even if of doubtful propriety, did not affect the verdict prejudicially or deprive the defendants of a fair trial. *Geier v. Tjaden*, 74 N.W.2d 361 (N.D.1955).

### III

■ Allen next contends that certain conduct by Kleven's counsel during the course of the trial was improper and so prejudicial as to make ineffective the admonitions and cautions issued by the trial court. Specifically, Allen points to two instances set forth *supra* wherein Kleven's counsel, presumably in an effort to undermine Allen's credibility and the credibility of one of her witnesses, made a statement and asked a question both of which were objected to by Allen's counsel. Both objections were sustained by the court and in both instances the jury was instructed to disregard the question and statement.

We believe this issue is without merit for several reasons. The question and statement by Kleven's counsel were obviously intended to prejudice the jury, and were improper. However, the trial court sustained Allen's objections and instructed the jury to disregard both the question and the statement. The court thus did everything

it could to avoid any adverse effect of the question and statement. *Thornberg v. Perleberg*, 158 N.W.2d 188 (N.D.1968). Moreover, the trial court not only did all it could to eliminate the prejudicial quality of the question and statement; the trial court did all that it was asked to do in this regard. Allen contends that the individual cautionary instructions were not enough because the cumulative effect of the conduct of Kleven's counsel was the real culprit. However, the record is devoid of any indication that the trial court was presented with this argument. In this respect it is difficult for us to see why Allen now attempts to argue that the trial court was in error. This is the type of issue or contention which, if not raised or considered in the lower court, may not be raised for the first time on appeal. *Moran, supra.*

### IV

Allen's next contention is that the trial court erred when it ruled as inadmissible that portion of Dr. Reddi's deposition relating to his estimate that a person such as Allen could earn approximately $259,000 during the remainder of her life. That figure was arrived at by using an inflation factor of seven percent. The thrust of Allen's argument is that inflation is a proper factor to consider in determining loss of future earning capacity. She relies exclusively upon *Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672 (1977), and the cases cited therein. She asserts that *Cords* stands for the proposition that it is error for a trial court to disallow consideration of inflation in determining future loss. However, we believe that once again Allen has focused upon an inappropriate point in raising this issue. The trial court did not at any time rule that inflation was not a proper consideration. It expressly limited its ruling to the ultimate figure reached by Dr. Reddi. Moreover, we do not believe that *Cords, supra*, lends support to Allen's position. In that case, while the court ruled generally that inflation may be taken into account by the factfinder in determining future medical expenses, the court expressly ruled that the trial court would not be limited to

mathematically applying a five percent annual inflation rate to determine future damages. In addition, Allen's counsel arranged that the jurors would not begin their deliberations without inflation in mind when he stated to them, "... We are asking for $75,000. For 45 years, it is not much per year, is it? You know what inflation will do to that."

Another important factor regarding this issue is that the record does not reflect that any evidence was ever presented to the jury to demonstrate that Allen's future earning capacity had been impaired by her injuries. On the contrary, there was medical testimony to the effect that, while she might occasionally experience some discomfort, Allen's injuries would not diminish her capacity to work at the jobs which she held in the past, specifically, cocktail waitressing and restaurant waitressing. Therefore, without evidence to establish a loss of future earning capacity, any figures, whether or not they included an inflation factor, regarding Allen's future earning ability would be irrelevant to the question of damages arising out of the alleged diminished capacity to work. It is well established in this State that the uncertainty which prevents recovery of damages is the uncertainty as to the fact of damages, not the uncertainty as to the amount of damages. *North American Pump Corp. v. Clay Equipment Corp.*, 199 N.W.2d 888 (N.D.1972). In the case before us the absence of evidence of damages arising out of any diminished future earning capacity makes the issue regarding whether or not a certain figure arrived at by Dr. Reddi was admissible an irrelevant question. In light of this, any error which may have been committed by the trial court with respect to the admissibility of Dr. Reddi's figure could not have been prejudicial.

### V

Allen next argues that the trial court erred when it ruled that she could not introduce evidence of items of expense for which she had already been compensated under the Auto Accident Reparations Act. Specifically, these items included hospital,

doctor, babysitting, and housekeeping bills. Allen contends that her purpose for having these items admitted was "to give the jury an idea how serious Ilene Allen's injuries were." The trial court concluded the testimony by deposition of Dr. Stinson, Allen's orthopedic surgeon, as well as Allen's own testimony would be adequate to show the jury the severity of her injuries.

The Auto Accident Reparations Act provides that secured persons are exempt from liability to pay damages under certain circumstances. Specifically, Section 26–41–12, N.D.C.C., provides, in part:

"1. In any action against a secured person to recover damages because of accidental bodily injury arising out of the ownership or operation of a secured motor vehicle in this state, the secured person shall be exempt from liability to pay damages for:
"a. Noneconomic loss unless the injury is a serious injury.
"b. Economic loss to the extent of all basic no-fault benefits paid or to become payable for such injury under this chapter after subtracting the same elements of loss recoverable under any workmen's compensation act."

"Serious injury" is defined in Section 26–41–03, N.D.C.C., as:

"18. 'Serious injury' means an accidental bodily injury which results in death, dismemberment, serious and permanent disfigurement or disability beyond sixty days, or medical expenses in excess of one thousand dollars. An injured person who is furnished the services in subsection 7 of this section without charge or at less than the average reasonable charge therefor in this state shall be deemed to have sustained a serious injury if the court determines that the fair and reasonable value of such services exceeds one thousand dollars."

**3.** Section 26–41–03(17), N.D.C.C., reads:
"17. 'Secured person' means the owner, operator, or occupant of the secured motor ve-

There has been no dispute that Kleven is a "secured person" as defined by Section 26–41–03(17), N.D.C.C.,[3] and is therefore entitled to the exemptions provided for in Section 26–41–12, N.D.C.C. There has also been no dispute that the injuries suffered by Allen were "serious" as defined by Section 26–41–03(18).

Our review of the record indicates that Allen testified extensively as to the collision, her immediately apparent injuries following the collision, her overnight hospitalization following the collision, her X-rays, her treatment by Dr. Browning and Dr. Stinson, the three surgeries performed on her knee, the therapy she underwent following the surgeries, the time she spent on crutches, and in great detail regarding the pain she had been experiencing for a period of 2½ years. In addition, the deposition of Dr. Stinson was read into the record and contained extensive details regarding the nature and extent of Allen's injuries and treatment. Finally, the hospital records of all of Allen's hospitalizations for treatment of the accident-related injuries were received in evidence.

We recognize that medical expenditures in a particular case may be relevant even when they are not recoverable from the defendant. *McGarry v. Skogley*, 275 N.W.2d 321 (N.D.1979). For instance, where there is a question of whether or not the plaintiff has sustained serious injury, medical expenses may be used to make a showing of serious injury under Section 26–41–03(18). However, in the present case we have no such question and we believe that the introduction of such evidence in this case would not have added materially to the testimony of Allen and Dr. Stinson regarding the seriousness of Allen's injuries.

We also point out that relevancy alone does not dictate that certain evidence be admitted. Rule 403, N.D.R.Ev., provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

hicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator, or occupant."

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Further, the Procedure Committee notes to Rule 403 state:

"... The rule vests wide discretion in the trial court to control the introduction of evidence."

We believe that because Allen was precluded from recovering from Kleven the amounts of the expenditures due to his status as a "secured person," it was not an abuse of the trial court's discretion to rule as inadmissible the items of expense which Allen sought to introduce.

## VI

 Allen next contends that it was error for the trial court to rule "that no evidence was admissible on ... future medical expenses." Allen urges that such a ruling is an invitation to multiple litigation because the injured person could be in a position where he would have to bring a suit every time he needs treatment in the future. We are not disposed at this time to consider this possibility because we find it entirely inapplicable to the present case.

The record is devoid of indication that the trial court ruled with regard to the admissibility of future expenses. Allen has presumably concluded that because the trial court ruled as inadmissible past medical expenses that ruling applied to future medical expenses as well. However, there is nothing in the record to support this presumption and even if there were it would be of

no consequence in the instant case because Allen made no offer of proof with regard to future medical expenses. This court in the past has stated that without an offer of proof the record is inadequate to raise the issue of exclusion of evidence. *Halverson v. Pet, Inc.*, 261 N.W.2d 887 (N.D.1978). Because of that position we believe that even if the trial court implicitly made the ruling claimed by Allen there was no error in such a ruling.

## VII

 Finally, Allen claims that the trial court erred when it did not honor her request that the standard jury instruction regarding loss of productive time, found at NDJI 820(B), be included in the court's instructions to the jury.[4]

Kleven and Williams argue that with the advent of the Auto Accident Reparations Act, which became effective January 1, 1976, the instruction urged by Allen which had been approved in June 1966, became inappropriate with respect to the issue of lost productive time in a case such as the present one. They reason that each is a "secured person" within the meaning of the Act and as such under Section 26–41–12, N.D.C.C., neither is liable for such a loss. On the other hand, Allen argues that productive time loss is not synonymous with economic loss, as contemplated in Section 26–41–12, and therefore the exemption does not apply to this type of loss. In attempting to draw a distinction between "productive time loss" and "economic loss," [5] Allen asserts that the economic loss compensable

---

4. NDJI 820 reads, in part:
 "In arriving at the amount of your verdict for damages arising from personal injury, you may consider each of the following items of claimed detriment proximately resulting from the injury in question:
 "B. *Loss of Productive Time*
 "The reasonable value of the productive time, if any, necessarily lost by the Plaintiff since the injury and of any productive time which you find the Plaintiff is reasonably certain to lose in the future because of the impairment of his occupational ability. In this regard you may consider his earnings, his earning capacity, the manner in which he ordinarily occupied his time before the inju-

ry, his state of health and physical ability, the nature and extent of his injury, whether or not it is reasonably certain to be permanent or, if not permanent, the extent of its duration, and all other factors bearing upon his earning capacity."

5. "Economic loss" is defined in Section 26–41–03(5), N.D.C.C., as:
 "a. Medical expenses and rehabilitation expenses; and
 "b. Work loss, replacement services loss, survivors income loss, survivors replacement services loss, and funeral, cremation, and burial expenses."

under the Auto Accident Reparations Act includes out-of-pocket loss in the form of lost wages or payments for replacement services. On the other hand, she contends that productive time loss is more akin to loss of earning capacity. However, in giving examples of her loss of productive time, Allen points to her need to hire babysitters and a house cleaner following the hospitalizations. These are precisely the types of replacement services which are compensable under the Auto Accident Reparations Act. Secs. 26–41–07 and 26–41–03(5), N.D. C.C.

If, as Allen asserts, loss of productive time is more closely related to loss of earning capacity than it is to economic loss, the jury instruction given by the court on earning capacity adequately covered loss of productive time. The court instructed the jury:

"C. Earning Capacity

"You are instructed that a person's earning capacity is what a person can earn normally and not what a person actually earns which is his earning power. The diminution of earning capacity is the measure of future loss.

"It involves comparing the capacity of the Plaintiff to earn money at the time of the injury with a capacity to earn money after the injury. The actual loss in dollars to the Plaintiff is one element that may be considered even though a person may not lose any actual income, and impairment of the working efficiency is still an element that can be considered in earning capacity. A person may not have worked or may have had no income prior

to a trial but still suffer impairment of future earning capacity."

We find no error on the part of the trial court in this instruction. The simple fact that the trial court did not employ the term "loss of productive time" did not serve to prejudice Allen. Even if NDJI 820(B) was applicable to the present case, this court's statement in *Armstrong v. Miller*, 189 N.W.2d 688, 693 (N.D.1971), reflects our position on this matter:

"We have repeatedly held that instructions of the trial court must be considered in their entirety and if the whole charge, when considered together, correctly advises the jury as to the law applicable to the case, there is no error even though the requested instruction was a correct statement of the law."

A review of the record indicates that the jury received adequate instructions as to all damages for which Allen was entitled to recover.

For the reasons stated herein, the judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., and GLASER, District Judge, concur.

GLASER, District Judge, sitting in stead of PAULSON, J., disqualified.