# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 301

David Phillip Rentz,                                    Plaintiff and Appellee

v.

BNSF Railway Company,

a Foreign For-Profit Corporation,            Defendant and Appellant

## No. 20200074

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Chief Justice.

Dale M. Schowengerdt (argued), Helena, MT, and Michael C. Waller (appeared), Bismarck, ND, for plaintiff and appellee.

Grant L. Davis (argued), John S. Carroll (appeared), Thomas C. Jones (on brief), Timothy C. Gaarder (on brief), Kansas City, MO, and Steven A. Lautt (appeared), James E. Nostdahl (on brief), David J. Hogue (on brief), Minot, ND, for defendant and appellee.

# Rentz v. BNSF Railway Co.
## No. 20200074

**Jensen, Chief Justice.**

[¶1] BNSF Railway Co. ("BNSF") appeals from a jury verdict and money judgment entered in favor of David Rentz. BNSF asserts it was denied a fair trial for the following reasons: (1) BNSF's designated representative at trial was allowed to be questioned beyond the scope of his knowledge; (2) video and audio clips taken from discovery depositions of BNSF's designated representatives were improperly played during opening and closing arguments; (3) BNSF's internal operating procedures were improperly used to modify the standard of care; and (4) opinion testimony of the investigating highway patrol trooper was excluded from evidence. Because we conclude the questioning of BNSF's representative at trial exceeded his personal knowledge and affected a substantial right, we reverse the judgment of the district court and remand this case for a new trial.

I

[¶2] In July 2012, a tractor-trailer driven by Rentz was struck by a train operated by BNSF and train engineer, Reinaldo Guitian, Jr. The collision occurred at a public railroad grade crossing. In December 2015, Rentz sued BNSF and Guitian for personal injuries sustained during the vehicle/train collision. Guitian was subsequently dismissed as a named defendant in the action.

[¶3] In January 2019, the district court held an eleven-day jury trial on Rentz's negligence claim. Guitian was designated as BNSF's party representative under N.D.R.Ev. 615 and was not sequestered from the courtroom. The jury returned a verdict finding Rentz 15% at fault and BNSF 85% at fault. A money judgment was entered in favor of Rentz.

[¶4] In July 2019, BNSF filed a motion for judgment as a matter of law or, in the alternative, a new trial. The district court denied BNSF's motion for a judgment as a matter of law and for a new trial. On appeal of the denial of its motion for a new trial, BNSF asserts the following errors occurred during the

1

trial: (1) the court improperly allowed Guitian, BNSF's designated party representative during the trial, to be examined outside the scope of his actual knowledge and to make binding statements on behalf of BNSF; (2) the court improperly allowed deposition video and audio clips of BNSF representatives to be played during opening statements and closing arguments; (3) federal law preempts BNSF's internal policies and the court improperly allowed the internal policies to alter the standard of care for negligence; and (4) the court improperly prevented a North Dakota highway patrol trooper from offering expert opinion testimony. BNSF argues the errors prejudiced a substantial right and had a significant probability of effecting the jury's verdict.

## II

[¶5]   Prior to the start of the trial, the court ordered the sequestration of witnesses pursuant to N.D.R.Ev. 615. As provided by N.D.R.Ev. 615(b), BNSF was allowed to designate one person to represent the corporation and remain in the courtroom throughout the trial. BNSF designated Guitian, the engineer operating the train at the time of the collision, as BNSF's representative during the trial.

## A

[¶6]   Central to Rentz's claim was whether vegetation obstructed the view of the railroad crossing where the collision occurred and, if so, whether BNSF was negligent in failing to properly control the vegetation. Guitian was called as a witness by BNSF. During the cross examination of Guitian, Guitian was questioned about BNSF's internal vegetation control policies and related corporate decision making regarding cutting the vegetation at the crossing where the accident occurred. Guitian testified he was not familiar with the policies or the decision regarding cutting the vegetation at the crossing where the accident occurred. Over BNSF's objection, Guitian was allowed to be examined regarding the policies and the decision-making. The court determined the examination was proper because Guitian had been designated as BNSF's N.D.R.Ev. 615(b) representative. BNSF asserts the court erred when it determined the designation of Guitian as BNSF's N.D.R.Ev. 615(b) representative eliminated the need for Guitian to have personal knowledge of

2

the policies and decision-making regarding the cutting of vegetation at the crossing where the accident occurred.

[¶7] Rule 615, N.D.R.Ev., serves the twin purposes of (1) preventing one witness' testimony from influencing the testimony of other witnesses; and (2) aiding in detecting false testimony and credibility issues. *Nesvig v. Nesvig*, 2006 ND 66, ¶ 20, 712 N.W.2d 299 (the purpose of sequestration is to prevent one witness' testimony from influencing another); *State v. Buchholz*, 2004 ND 77, ¶ 24, 678 N.W.2d 144 (sequestration permits discovery of false testimony and credibility issues). Our statement of the purpose of Rule 615 is consistent with Fed.R.Evid. 615 which served as the model for our rule. *See*, *e.g.*, *United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003) ("The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty.").

[¶8] Guitian testified as a lay witness. The testimony of lay witnesses is governed by N.D.R.Ev. 602 which provides "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." This Court has not previously interpreted N.D.R.Ev. 615 as eliminating the need for a lay witness to have personal knowledge of the matter upon which the witness is testifying. Rentz has not directed us to any authority or decisions from other jurisdictions interpreting an equivalent to our rule which would support elimination of the need for a lay witness to have personal knowledge of the matter upon which the witness is testifying.

[¶9] During the parties' discussion with the court regarding BNSF's objection to the scope of Rentz's examination of Guitian, several references were made to the designation of corporate representatives pursuant to N.D.R.Civ.P. 30(b)(6) for the purpose of deposing an organization. Rule 30(b)(6) requires a party seeking to depose a "public or private corporation, a partnership, an association, a governmental agency, or other entity" to "describe with reasonable particularity the matters for examination." The "organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set

3

out the matters on which each person designated will testify." N.D.R.Civ.P. 30(b)(6). Additionally, the individuals designated to testify during the deposition "must testify about information known or reasonably available to the organization."

[¶10] While the designation of a representative to remain in the courtroom during trial pursuant to N.D.R.Ev. 615 and the designation of an organizational representative for the purpose of a deposition pursuant to N.D.R.Civ.P. 30(b)6) appear similar on their face, they serve a different purpose. There is no requirement in Rule 615 that the representative designated to remain in the courtroom during trial "must testify about information known or reasonably available to the organization" as required in the process provided within Rule 30(b)(6). Rule 615 does not act as a substitute for the process described in N.D.R.Civ.P. 30(b)6) and does not require the organization to expose its trial representative to examination regarding all information known or reasonably available to the organization.

[¶11] BNSF timely objected to the examination of Guitian on BNSF's vegetation control policies and BNSF's decision not to follow those policies at the location of the accident in this case. Prior to the objection, Guitian had testified he did not have personal knowledge regarding those matters. We conclude the court erred in requiring Guitian to testify on matters outside his personal knowledge when he was cross examined on BNSF's vegetation control policies and whether those polices were followed at the location of the accident in this case.

B

[¶12] Having found the trial court erred in permitting Guitian to testify to matters outside his personal knowledge, we next consider whether the error constitutes grounds to grant a new trial. The decision to grant or deny a new trial rests within the sound discretion of the trial court, and its decision will not be set aside on appeal absent an affirmative showing of a manifest abuse of discretion. *See, e.g.*, *Sathren v. Behm Propane, Inc.*, 444 N.W.2d 696, 697

4

(N.D. 1989); *Roberts v. Hail Unlimited, a Div. of Int'l Bus. & Mercantile Re-Assurance Co.*, 358 N.W.2d 776, 780 (N.D. 1984); *Cullen v. Williams Cty.*, 446 N.W.2d 250, 252 (N.D. 1989). A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misapplies or misinterprets the law. *Haider v. Moen*, 2018 ND 174, ¶ 6, 914 N.W.2d 520.

[¶13]   Pursuant to the "harmless error" rule, Rule 61, N.D.R.Civ.P., only errors or defects which affect substantial rights of the parties will warrant a new trial. *Haider,* at ¶ 6; *Sathren,* 444 N.W.2d at 698. Rule 61, N.D.R.Civ.P., states our harmless-error standard in civil cases and reads as follows:

> Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

[¶14] Generally, the burden of showing both error and harm falls upon the appellant. *Kronberger v. Zins*, 463 N.W.2d 656, 658–59 (N.D. 1990) (citing *Allen v. Kleven*, 306 N.W.2d 629, 639 (N.D. 1981); *Zimmer v. Bellon*, 153 N.W.2d 757, 760 (N.D. 1967)). Here, BNSF has the burden to demonstrate the error had an effect on a substantial right.

[¶15] This Court has not previously defined "harmless error" in the civil context. In the criminal context, N.D.R.Crim.P. 52(a) directs that "[a]ny error, defect, irregularity or variance that does not affect substantial rights must be disregarded."

[¶16] This Court has defined harmless error in a criminal case as follows:

> Our objective in reviewing non-constitutional trial error is to determine whether the error was so prejudicial that substantial injury occurred and a different decision would have resulted without the error. If not, it is "harmless error" . . . and is not ground for reversal. Harmless error is defined as any error, defect,

5

irregularity or variance which does not affect substantial rights. Stated simply, harmless error is error that is not prejudicial to the defendant.

*State v. Acker*, 2015 ND 278, ¶ 12, 871 N.W.2d 603 (internal citations omitted).

[¶17] Many other jurisdictions have defined harmless error in civil cases. In federal courts, the civil harmless error analysis operates as follows:

In Keil, the Eighth Circuit held that a similar Rule 23(h) [notice of fees and nontaxable costs by counsel in class action] error was harmless because "there [wa]s no reasonable probability that it affected the outcome of the proceeding"—in particular, it said, "even if class members had an opportunity to object to the fee motion, there [wa]s no reasonable probability that their objections would have resulted in the court awarding a lower fee." The court explained that the objectors "had an ample opportunity on appeal to respond to the specific arguments contained within class counsel's fee motion" and "[d]espite raising a number of objections, none of their arguments [were] meritorious."

The Keil court's analysis mirrors how we ordinarily conduct harmless-error review—that is, by asking whether the complaining party's substantial rights have been affected. We have explained that errors "affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case."

In a similar context, we have held that if a district court's misapplication of a Federal Rule doesn't deny a party the opportunity to present arguments that would have changed the outcome, the error is harmless.

*Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1253-54 (11th Cir. 2020) (internal citations and footnote omitted).

[¶18] Other state courts have also defined harmless error in the civil context. *See Richard v. Board of Sup'rs of Louisiana State University and A & M College*, 960 So.2d 953 n.13 (La. Ct. App. 2007) (clarifying the standard for harmless error as, "[e]rror has been defined as harmless when it is 'trivial,

formal, merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case.'") (citation omitted); *Bay Point Properties, Inc. v. Mississippi Transp. Comm'n*, 201 So.3d 1046, 1056 (Miss. 2016) ("Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it.") (citation omitted); *Wyeth v. Rowatt*, 244 P.3d 765, 778 (Nev. 2010) (to establish an error is prejudicial and therefore warrants a reversal "the movant must show that the error affects the party's substantial rights so that, but for the alleged error, a different result might reasonably have been reached."); *State v. Zamora*, 575 P.2d 1355, 1359 (N.M. 1978) (defining "harmless error" as one that is "not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case.") (citation omitted); *Bank of Pleasant Grove v. Johnson*, 552 P.2d 1276, 1278 (Utah 1976) ("Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it.") (citation omitted).

[¶19] While we have not defined harmless error in the civil context, we have often applied the rule. One application was in *Johnson v. Buskohl Construction, Inc.*, 2015 ND 268, ¶ 17, 871 N.W.2d 459, where defendant Buskohl claimed it was prejudiced when the district court erred by admitting hearsay evidence to support Johnson's damage claim. We agreed the court erroneously admitted the evidence, and proceeded to examine whether the error was harmless. *Id.* at ¶¶ 27-28. In reversing the jury verdict, this Court concluded, "we [were] not able to determine what evidence the jury relied on or disregarded when it calculated its award. Without reviewing a categorically itemized special verdict form, we cannot rule out the possibility the jury relied on inadmissible hearsay in calculating a substantial portion of its award." *Id.* at ¶ 30 (citation omitted). As a result, we concluded that, "because a substantial proportion of the award could have been based on inadmissible

hearsay evidence, Buskohl's substantial right to a fair trial was affected. Therefore, Buskohl has established his substantial right to a fair trial was affected by the erroneous admission of the estimate." *Id.*

[¶20] BNSF argues Guitian lacked sufficient knowledge to BNSF's internal vegetation policies and procedures, and whether BNSF had consciously decided not to follow its internal policies and procedures. During cross-examination of Guitian, the following exchange occurred regarding Guitian's position with BNSF and his lack of knowledge about maintaining trackside vegetation:

> Q. Now, at the time of the train wreck you did not understand, you didn't know the rules about cutting the right-of-way back to 200 feet because you weren't the one that cut the trees, right?
>
> A. Right. We're inoperate in February [SIC], we're not Maintenance of Way.
>
> Q. Well, here's what I'm trying to get at. We asked you whether or not you knew the rules about how the Maintenance of Way was supposed to cut the trees. And you said you didn't, correct?
>
> A. Right, I don't.
>
> Q. Because you're—you are a professional engineer, correct?
>
> A. Correct.
>
> Q. The BNSF has professional engineers that don't drive trains that they do things at crossings. Like make sure there's proper sight distance, correct?
>
> A. Correct.
>
> Q. So we saw those engineering rules before about cutting the vegetation. Those engineering rules don't apply to you, or—strike that. They're not directed to you because you're an engineer that drives a train, correct?

A. Correct.

Q. There's a different set of engineers that are engineers that take care of the tracks, that take care of the right-of-way, correct?

A. Correct.

Q. And there's a group called the Maintenance of Way, correct?

A. Correct.

Q. And the Maintenance of Way means the maintenance of the right-of-way, correct?

Immediately following Guitian's description of his lack of knowledge about vegetation control, the following occurred in front of the jury:

Q. And—Okay. Let's put up—Well first of all, let's put up the BNSF rule that requires a—

Mr. Thornton [BNSF's counsel]: Objection. No foundation. Objection, this witness has already disqualified himself from knowing about the engineering rules.

Mr. Davis [Rentz's counsel]: Well—

The Court: Mr. Davis.

Q. Sure. You're the BNSF corporate rep, correct?

Mr. Thornton: No.

Mr. Davis: Yes, he is. They announced it at the beginning of the case he's a corporate rep.

Mr. Thornton: No he's not. He's the client representative who's to be here, he's not the corporate rep.

Mr. Davis: Your Honor.

The Court: Counsel, please approach.

9

The following exchange occurred at the subsequent bench conference:

> The Court: My recollection from the first day when it was asked whether or not he could be in here, the question was posed by you, and (indiscernible) corporate rep.
>
> Mr. Thornton: No, he's not the corporate rep, he's the client representative who attends the trial, but he's not a corporate rep.
>
> Mr. Davis: The only reason he can sit through this trial and hear everyone who testified is if he's the corporate rep.
>
> The Court: And that's what I thought you stated, Mr. Thornton.
>
> Mr. Thornton: No, I stated that he was the trial representative, but he's not the corporate rep. He's an engineer. He's in the union.
>
> Mr. Davis: There's no such thing as a someone who's just a client representative. Either he's a corporate or he's not the corporate rep. If he's not corporate rep, he's shouldn't have been in this courtroom.
>
> The Court: I agree. Anything further?
>
> Mr. Davis: No.
>
> The Court: Okay.
>
> Mr. Thornton: He's not the corporate rep.
>
> The Court: Okay.
>
> Mr. Davis: Thank you.

Back in front of the jury, Rentz's counsel returned to questioning Guitian about BNSF's vegetation policies:

> Mr. Davis: So, let's put up 12, the rule, the one, yeah, right down there at the bottom. So Exhibit 3, Your Honor, we're putting up—

Mr. Thornton: What page is this?

Mr. Davis: Everyone's seen this. And you've seen it Mr. Guitian, correct?

A. Correct.

Q. As the corporate rep of BNSF sitting in this courtroom, correct?

A. Correct.

Q. It says the vegetation at every public crossing, and you know this public crossing, correct?

A. Correct.

Q. Must comply with federal standards and state laws, as minimum, vegetation shall be controlled for the full width of the railroad's right-of-way at the crossing, and then taper down for the next 500 feet. Do you see that?

A. Yes I do.

Q. We can see the figure above it, it says figure 12.3 of a first or a figure, 12.3. Let's go to 12.3 on the next page. So 12.3 shows the typical pattern up top, let's look at that. Do you see that's the width of the right-of-way tapered back 500 feet, correct?

A. Correct.

Rentz's counsel also questioned Guitian about BNSF's General Code of Operating Rules as applied to vegetation control:

Q. So GCOR is General Code of Operating Rules, correct?

A. Correct.

Q. And so—now—So we already did one now—Can you blow this up a little so I can see?

Q. So the first one was basically be safe, correct?

11

Q. Can you go down to—blow them both up at the same time. No, the one above it. Okay. "Safety is the most important element in performing duties. Obeying the rules is essential to job safety and continued employment." Did I read that right?

A. You did.

Q. The next rule right below it is, "In case of doubt or uncertainty, take the safe course." Correct?

A. Correct.

Q. And the safe course would be to cut those trees on the right-of-way. They're mandated by the rules, correct?

A. Correct.

Rentz's counsel also questioned Guitian about BNSF's interrogatory answers. Guitian did not answer the interrogatories, had never seen the interrogatory answers, and did not know about the subject matter. The questioning was allowed under the erroneous determination the examination was permitted because Guitian had been designated as BNSF's trial representative pursuant to Rule 615(b), N.D.R.Ev.:

> Your Honor, I'm going to show him defendant BNSF railroad company's second supplemental answers to plaintiff's second interrogatories. Interrogatories are written questions. They've asked us a bunch. We've asked them a bunch. You have to answer them under oath.
>
> The Court: Before you put that up, please approach.
>
> Mr. Davis: Sure.
>
> (AT SIDEBAR)
>
> Mr. Davis: It says they did—
>
> The Court: Get your microphones off. The use of interrogatories?

Mr. Davis: Yes. And for whatever reason, I think I objected last week. He had him agreeing to what Trooper Hurteau said about the measurements and the train. These show that BNSF says they're wrong. He's the BNSF corporate rep. So they're sworn interrogatory statements. I can use them at trial. This is cross-examining BNSF. These are BNSF interrogatories.

The Court: Mr. Thornton?

Mr. Thornton: First of all, the pleadings are out, pursuant to the Court's motion in limine, and this witness has no idea what the interrogatories said. He wasn't consulted.

Mr. Davis: He is a BNSP [sic] corporate rep, but Your Honor, pleadings are generally out like petitions and answers, but interrogatory answers can be used in a trial. In fact, there's an instruction on it that says interrogatories can be used at trial.

The Court: He testified he is the corporate rep.

Mr. Thornton: So—

The Court: That was just moments ago.

Mr. Thornton: He's not the corporate rep. He's a client representative for the trial.

The Court: Okay. But when asked, he testified about ten minutes ago that he was the corporate rep. So rather than publishing, if you would like him to review it, but I would prefer at this junction that it not be published before the jury.

Shortly after the bench discussion, Rentz's counsel asked Guitian about BNSF's interrogatory answers and again referred to Guitian as BNSF's corporate representative:

Q. No. So, BNSF says Trooper Hurteau's measurements were wrong, correct?

A. It just says he doesn't remember it, yeah.

13

Q. No. I'm going to ask the next question, number 28. Does BNSF—The interrogatories indicate that BNSF does not agree to measurements of Trooper Hurteau, correct?

A. Correct.

Q. All right. And you are a BNSF representative, correct?

A. Yes, I am. As an engineer, yes.

Rentz's counsel again asked Guitian about BNSF vegetation policies, and again referred to Guitian as BNSF's corporate representative:

Q. Okay. Then, of course BNSF knows about its own rules that you have to cut the trees from the full width of the right of way, correct?

A. Correct.

Q. And in this case, it's 200 feet, correct?

A. Correct.

Q. You saw where BNSF corporate reps replayed those clips of the video? Said they could have cut it to 200 feet, but they decided not to, correct?

A. Correct.

Q. So that would be BNSF, you're the corporate rep. BNSF making a conscious decision to not follow the rules, correct?

A. Correct.

Q. Those are safety rules, correct? Those are rules to keep people safe at crossings, correct?

A. Correct.

14

Q. And finally, because of BNSF's trees, Mr. Rentz didn't see you until it was too late, and you didn't see him until it was too late, correct?

A. Partially, yes.

During closing arguments Rentz's counsel told the jury how they should complete the verdict form and continued to erroneously refer to Guitian as BNSF's corporate representative. After recounting what Rentz's counsel described as Guitian's "admissions," PowerPoint slides with bullet points and testimony quotations were used to highlight the "admissions." The transcript contains the following:

So go to the next one. "So it would have been safer for you and for the trucker if those trees were not there. Correct?"

"Correct."

"And those trees still exist there, at least as far as you know, on July 13th, 2016. Correct?"

"Correct."

Next slide. "So in real life, you have 1001 indicating, and not seeing it in a second creates a trap where you get hit by a train. That's not safe. Correct?"

"Correct."

You are officers of the court, bound to follow the law and the evidence. That is evidence that their corporate rep—he was working as their corporate rep—said that it was a trap, not seeing in a second creates a trap where you get hit by a train. "That's not safe. Correct?" So you know what—the last sentence is:

"So you know what—you admit this all happened real fast. Real fast. Correct?"

Rentz's counsel continued his argument describing to the jury his interpretation of Guitian's testimony, including that they were BNSF's "admissions" that "[c]an't be taken back":

> Next slide. "And a safe course would be to cut those trees on the right-of-way, mandated by the rules. Correct?"
>
> "Correct."
>
> Once again, admission. Can't be taken back. Next slide. "You know that for decades BNSF knew about these trees on the right-of-way. Correct?"
>
> "From what I've heard, yes. Correct."
>
> Next slide. "And, of course, BNSF knows its own rules, that you have to cut the trees for the full width of the right-of-way. Correct?"
>
> "Correct."
>
> "And in this case it's 200 feet. Correct?"
>
> "Correct."
>
> "And you saw where BNSF corporate reps were playing those clips of the video. They said they could have cut it to 200 feet, but they decided not to. Correct?"
>
> "Correct."
>
> "So that would be BNSF—you're the corporate rep—BNSF making a conscious decision to not follow their rules. Correct?"
>
> "Fair."
>
> "And those are safety rules. Correct? Those are rules to keep people safe at crossings. Correct?"
>
> "Correct."

Now just stay there for a second. Premeditated. You understand what premeditated is. When you have a second or two to decide something, that's different, which is what David Rentz said. When you make a conscious decision, it's premeditated. And what they did was make a conscious decision not to cut those trees.

Next slide. "So at the time of your deposition you agreed he didn't see you until it was too late, and you didn't see him until it was too late. Correct?"

"Correct."

So this is an eyewitness there, they called here, eyewitness who's saying that this is a trap and that he couldn't see and Mr. Rentz couldn't see until it was too late.

Now, we got to ask yourself, why didn't they bring the conductor in? The conductor was on the side closer. BNSF could bring in this conductor, their conductor. There's three eyewitness [sic], in effect, to a train wreck: Mr. Rentz, who doesn't remember what happened; Mr. Guitian; and Gene Thompson. They didn't bring Gene Thompson. What do you think that means?

Now, let's go to the next slide. "The trees were a big part of how this train wreck happened, weren't they?"

"Correct."

If you need any more support for them being at fault or being a proximate cause, then look at that. That's what their corporate rep said. Eyewitness.

[¶21] The above quotations of Guitian's testimony and the closing arguments show Rentz's entire theory of liability was that the collision occurred because BNSF failed to remove trees on its right-of-way. In the last sentence quoted above, Rentz tied Guitian's claimed admissions to BNSF, and told the jury that was all they needed to find BNSF at fault and that its fault proximately caused Rentz's injuries. Rentz's calculated and repeated use of improperly admitted evidence was neither incidental nor isolated.

17

[¶22] The only other information before the jury on BNSF's alleged admissions about failure to follow vegetation control policies and laws were from deposition clips played by Rentz's counsel during closing arguments. But, as the district court instructed the jury, those arguments were not evidence:

> The case is argued by a lawyer for each side as to what they consider the evidence has shown and as to what inferences they contend you should draw from the evidence. Closing argument is not evidence. The arguments are designed to present to you the viewpoint of each side based on the evidence presented.

[¶23] A review of the record as a whole demonstrates Rentz regularly repeated and heavily relied on the inadmissible evidence. After reviewing the record we are "not able to determine what evidence the jury relied on or disregarded" when it found liability. *Johnson v. Buskohl Construction, Inc.*, 2015 ND 268, ¶ 30. Additionally, "because a substantial proportion of the award could have been based on inadmissible [...] evidence, [BNSF's] substantial right to a fair trial was affected. Therefore, [BNSF] has established [its] substantial right to a fair trial was affected by the erroneous admission of the [evidence]." *Id.* The court abused its discretion in denying BNSF's motion for a new trial where improperly admitted evidence affected a substantial right to a fair trial.

## III

[¶24] BNSF has raised several other issues on appeal, including: whether video and audio clips taken from discovery depositions of BNSF's designated representatives were improperly played during opening and closing arguments; whether BNSF's internal operating procedures were improperly used to modify the standard of care; and whether opinion testimony of the investigating highway patrol trooper was excluded from evidence. Resolution of these remaining issues on appeal is unnecessary in light of our remand to the district court.

## IV

[¶25] We review the denial of a motion for a new trial for an abuse of discretion by the court. The court abused its discretion in denying the motion for a new

trial because the examination of BNSF's designated trial representative exceeded the scope of his personal knowledge, and the subsequent use of the testimony had an affect on the substantial right of BNSF to have a fair trial. We reverse the judgment of the district court and remand this case to the district court for a new trial.

[¶26] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte